IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OLD HOUSE SPECIALISTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-171-SMD |
| | ) | |
| THE GUARANTEE INSURANCE OF NORTH AMERICA USA, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

Plaintiff Old House Specialists, LLC ("Old House") brings a two-count complaint against Defendant The Guarantee Insurance of North America USA ("GCNA")[1] for breach of contract and the tort of bad faith. *Compl.* (Doc. 1-1) pp. 1-3. Old House's civil action arises from a dispute over a claim it submitted under a payment bond issued by GCNA on a construction project. *Id.* Old House seeks compensatory and punitive damages from GCNA. *Id.* at 2, 3.

Before the Court is GCNA's Motion to Strike or, in the Alternative, Motion to Dismiss Old House's bad faith claim. *GCNA Mot.* (Doc. 6) p. 1. For the following reasons, the Court grants GCNA's Motion to Dismiss and denies GCNA's Motion to Strike as moot.[2] Old House's bad faith claim is dismissed with prejudice.

---

[1] In the motion before the Court, GCNA states that Old House has incorrectly named it within the complaint and that its correct name is The Guarantee Company of North America. *GCNA's Mot.* (Doc. 6) p. 1.

[2] Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017). Because GCNA is

**I.      LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This requires a pleader to allege more than "labels and conclusions," as "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations and quotations omitted). While notice pleading does not require a pleader to allege a "specific fact" to cover every element or allege "with precision" each element of a claim, the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Finc. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F. 3d 1282-82 (11th Cir. 2007) (internal quotes and citations omitted).

In evaluating a Rule 12(b)(6) motion, a reviewing court must accept all well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in this manner, the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 545 (internal citations

---

challenging the legal sufficiency of Old House's bad faith claim, the Court will address that argument through the Rule 12(b)(6) framework and will deny the motion to strike as moot.

omitted). If the district court determines that the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim is due to be dismissed. *Iqbal,* 556 U.S. at 679.

## II.  FACTUAL BACKGROUND[3]

Non-party MAL, LP, contracted with non-party wdg Construction and Development Services, Inc. ("wdg") to complete a construction project in Montgomery, Alabama. *Payment Bond* (Doc. 1-2) pp. 1-2. On August 28, 2017, GCNA, acting as a surety for wdg, issued a payment bond (the "Bond") in the amount of $14,201,464 for the benefit of "Claimants"[4] that supplied labor, materials, and/or equipment for the project. *Compl.* (Doc. 1-1) p. 1; *Payment Bond* (Doc. 1-2) pp. 1-2. Old House, a Claimant under the Bond, submitted a claim to GCNA for labor, materials, and/or equipment it provided for the project. *Compl.* (Doc. 1-1) p. 1. GCNA did not pay Old House's claim. *Id.* at 2.

## III.  DISCUSSION

Old House asserts a bad faith claim against GCNA for intentionally refusing and failing to pay its claim under the Bond. *Compl.* (Doc. 1-1) p. 2. GCNA asks the Court to dismiss this claim, arguing that Alabama law does not recognize the tort of bad faith in the context of a payment bond. *GCNA's Mot.* (Doc. 6) pp. 2-7. GCNA reasons that, under Alabama law, the tort of bad faith is recognized in the limited context of typical insurance contracts and, because a payment bond is not an insurance contract, it cannot be held liable for bad faith in denying Old House's claim. *Id.*

---

[3] For purposes of ruling on GCNA's Motion to Dismiss, the Court sets forth the well-pleaded factual allegations of Old House's complaint in this section and treats them as true. The Court does not consider the legal conclusions asserted within Old House's complaint, as those statements are not well-pleaded.

[4] The Bond defines a Claimant as "one having a direct contract with [wdg] or with a subcontractor of [wdg]." *Id.* at 2.

The Alabama Supreme Court has not specifically addressed whether a claim for bad faith applies to a payment bond. Without precedent on the matter, this Court must make an "educated guess" as to whether the Alabama Supreme Court would recognize the tort of bad faith in this context. *See Nobs Chem., U.S.A., Inc. v. Koppers Co.*, 616 F.2d 212, 214 (5th Cir. 1980)[5] ("Where no state court has decided the issue a federal court must 'make an educated guess as to how that state's supreme court would rule.'" (quoting *Benante v. Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir. 1973)). In doing so, the Court examines (1) the Alabama Supreme Court's application of the tort, and (2) the policy considerations behind the recognition of the tort. Having considered both, the Court concludes that the Alabama Supreme Court would not extend the tort of bad faith to the payment bond here.

### A. The Alabama Supreme Court is reluctant to apply the tort of bad faith outside of the typical insurance context.

To state a claim for bad faith under Alabama law, a plaintiff must allege:

> (1) an *insurance contract* between the parties and a breach thereof by defendant; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (emphasis added). Clearly, then, a bad faith claim requires a breach of an insurance contract.

---

[5] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Alabama defines insurance as "[a] contract whereby one undertakes to indemnify another or pay or provide a specified amount or benefit upon determinable contingencies." ALA. CODE § 27-1-2(1). Similarly, the Alabama Supreme Court has characterized insurance as "a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay him or his nominee a certain or ascertainable sum of money on a specified contingency." *Schoepflin v. Tender Loving Care Corp.*, 631 So. 2d 909, 911 (Ala. 1993). While any number of contracts could technically fall within the purview of these definitions, the Alabama Supreme Court has repeatedly rejected the application of the tort of bad faith outside of the typical insurer/insured relationship—i.e., "where the insured or his employer enter[] into a written contract of insurance with an insurer and premiums [are] paid into a central fund out of which claims [are] to be paid." *Peninsular Life Ins. Co. v. Blackmon*, 476 So. 2d 87, 89 (Ala. 1985).

For example, the Alabama Supreme Court has declined to recognize bad faith claims against defendants who are not insurers. *United Am. Ins. Co. v. Brumley*, 542 So. 2d 1231, 1239 (Ala. 1989) (noting that "the classification of insurance companies as the sole potential defendants in bad faith actions is reasonable").[6] Even when the defendant is an insurer, the court has denied a bad faith claim in a suit between a primary and excess insurer. *Fed. Ins. Co. v. Travelers Cas. & Sur. Co.*, 843 So. 2d 140, 143 (Ala. 2002).

---

[6] *See also Gaylord v. Lawler Mobile Homes, Inc.,* 477 So. 2d 382, 383-84 (Ala. 1985) (holding that the tort of bad faith exists in Alabama only within the insurance policy context and cannot be asserted against the vendor of a mobile home); *Kennedy Elec. Co. v. Moore-Handley, Inc.,* 437 So. 2d 76, 81 (Ala. 1983) (declining to extend the tort of bad faith to the area of sales).

5

Moreover, the Alabama Supreme Court has refused to extend the tort of bad faith to third-party beneficiaries of an insurance contract. *Williams v. State Farm Mut. Auto. Ins. Co.*, 886 So. 2d 72, 75-76 (Ala. 2003) (finding that "a party cannot bring an action against an insurance company for bad-faith failure to pay an insurance claim if the party does not have a direct contractual relationship with the insurance company"). Therefore, even if a contract could be considered "insurance" under Alabama's law, this fact alone is inconclusive of whether bad faith applies to the contract. *Ala. Mun. Ins. Corp. v. Munich Reinsurance Am., Inc.*, 2021 WL 981495, at *3 (M.D. Ala. Mar. 16, 2021).

Rather, "Alabama courts have applied the tort [of bad faith] to only a limited subset of agreements, specifically those that most resemble typical insurance contracts." *Id.*; *Metmor Fin., Inc. v. Commonwealth Land Title Ins. Co.*, 645 So. 2d 295, 297 (Ala. 1993) (for bad faith claim to arise, an insurer-insured relationship must exist). A payment bond, which is a type of surety bond, does not resemble a typical insurance contract. This conclusion is supported by the usual view that "suretyship is not insurance." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 n.19 (1962). Several district courts within this Circuit have found the same and have thus concluded that the Alabama Supreme Court would not extend the tort of bad faith to suretyships. *See, e.g., Goudy Constr., Inc. v. Raks Fire Sprinkler, LLC*, 2019 WL 6841067, at *5 (N.D. Ala. Dec. 16, 2019) (holding that the Alabama Supreme Court would not choose to extend the tort of bad faith to suretyships, despite the fact that they are regulated under the Alabama Insurance Code); *Amwest Sur. Ins. Co. v. Pittsburg Tank & Tower Co.*, CV-95-A-1516-S (M.D. Ala. Nov. 15, 1996) (holding "that a surety bond is not an insurance contract and that a breach of a surety bond

6

cannot give rise to the so-called 'tort of bad faith'"); *Sprinkler Contractors, Inc. v. U.S. Fid. & Guar. Co.*, CV-82-AR-1909-S (N.D. Ala. Feb. 22, 1983) (finding that the plaintiff's bad faith claim, which arose from the breach of a surety bond, was not based on an insurance contract and therefore could not support a claim for bad faith).[7] Similarly, Alabama trial courts have denied bad faith claims against a surety. *Coosa Excavating, Inc. v. The Conlan Co., Inc.*, Circuit Court of Jefferson Cnty., Ala., CV-2009-0244 (Apr. 27, 2010) (dismissing bad faith claim on finding "that Alabama law does not recognize a claim for the tort of 'bad faith' against a surety"); *Great Am. Ins. Co. v. BRIC Gen. Contractors, Inc.*, Circuit Court of Jefferson Cnty., Ala., CV-2002-5722 (Apr. 7, 2005) (granting surety's motion to strike/dismiss an obligee's claim for bad faith against the surety); *HMR Constr. Inc. v. Great Am. Ins. Co.*, Circuit Court of Mobile Cnty., Ala., CV-2001-0960 (Nov. 16, 2001) (granting surety's motion for partial summary judgment as to obligee's claim of "bad faith" against surety under a private works bond).

Thus, regardless of whether a payment bond falls within the technical definition of insurance under Alabama law, the Court agrees that a payment bond is not a typical insurance contract. The Alabama Supreme Court's reluctance to extend the tort of bad faith outside of the typical insurance context, then, advises against extending the tort of bad faith to a payment bond. The Court concludes that this weighs against finding that the tort of bad faith applies to the Bond at issue in this case.

---

[7] The opinions for *Amwest* and *Sprinkler Contractors* are not available on Westlaw, Lexis Nexis, or the Court's online CM/ECF system. GCNA has provided the cases as exhibits to its motion. (Docs. 6-1, 6-3). There is no dispute over the authenticity of these decisions.

### B. The policy considerations behind the tort of bad faith advise against extending the claim to a payment bond.

In determining whether to extend the tort of bad faith outside of the typical insurance context, Alabama courts rely heavily upon the underlying policy considerations. In the typical insurance context, a bad faith claim applies when an insurer denies an insured's claim despite knowing that it had no reasonable basis to do so or when it fails to investigate an insured's claim sufficiently. *Munich*, 2021 WL 981495, at *2. A bad faith claim offers the insured the opportunity to claim relief—e.g., damages for mental anguish, additional economic losses, and punitive damages—that would not be available in an action for breach of contract. *Id.* Therefore, the tort was recognized to even the "inherently unbalanced" relationship between the insurer and the insured who typically has no room to negotiate or set her own terms in the contract. *See, e.g.,* Stephen D. Heninger, *Bad Faith in Alabama: An Infant Tort in Intensive Care,* 34 ALA. L. REV. 563, 563 (1983); *Munich,* 2021 WL 981495, at *2.

Because of the inherent differences between a typical insurance contract and a payment bond, the policy considerations behind recognizing the tort of bad faith do not exist in the context of a payment bond. First, a typical insurance contract involves two parties—i.e., the insurer and the insured. Suretyship, on the other hand, creates "a tripartite relationship between and among the party secured (the bond obligee), the principal (the bond obligor), and the party secondarily liable (the surety)." Shattuck, R. Cooper, *Bad Faith: Does it Apply to Sureties in Alabama*, 57 ALA. LAW. 241, 241 (July 1996). A surety bond compensates "for losses sustained by an obligee as a result of the principal's failure

to perform its contractual or statutory obligations to the obligee." *Id.* Under this arrangement, a surety company has a contractual relationship with *both* the principal and the obligee. *Id.* at 244. This presents a dilemma of the surety's potential liability to one party or the other that is not present in typical insurance contracts. *Id.*

Second, in a payment bond, a non-party to the bond may make a claim against the surety. In the context of a payment bond for a construction project, a non-party claim may arise when a subcontractor of the contractor (who is the principal in the agreement) is not paid for labor, materials, or equipment used in the project. *Id.* at 242. Importantly, a subcontractor/claimant under a payment bond is *not* a party to the contract. Instead, it is more akin to a third-party beneficiary of the agreement between the surety, the obligee, and the principal. As a third-party beneficiary, the subcontractor/claimant does not engage in negotiation of the payment bond.

Finally, unlike the parties in a typical insurance contract, the parties to a payment bond are usually commercial enterprises. Because commercial enterprises possess relatively equal bargaining power, there is no need to restore balance in the contractual relationship between them by extending the tort of bad faith. *Tanner v. Church's Fried Chicken, Inc.*, 582 So. 2d 449, 452 (Ala. 1991) (holding that the tort of bad faith does not apply to commercial contracts because the policy considerations underlying the tort of bad faith are "not present in the context of contracts between [ ] private parties" who are "both commercial enterprises").

Because payment bonds are inherently different than typical insurance contracts, the policy considerations behind the tort of bad faith do not apply. Unlike the relationship

9

between the insurer and insured in an insurance contract, the three-party relationship in a payment bond is not "inherently unbalanced." This is even more true when a breach of the payment bond stems from obligations to a third-party beneficiary (who is a commercial entity) that did not negotiate the payment bond. Considering the policy considerations underlying the tort of bad faith and their inapplicability to payment bonds, the Court concludes that the Alabama Supreme Court would not extend the tort of bad faith to a payment bond. Accordingly, this conclusion weighs against extending the tort of bad faith to the Bond at issue here.

### C. The Alabama Supreme Court would likely not extend the tort of bad faith to the payment bond here.

The Court finds that the Alabama Supreme Court would not extend the tort of bad faith to the Bond at issue in this case. First, the Alabama Supreme Court is reluctant to extend the tort of bad faith outside of the typical insurance context. The Court's conclusion that a payment bond is not an insurance contract advises against allowing a bad faith claim to proceed against GCNA. Supporting this decision are multiple lower state court and Alabama federal district court decisions that do not recognize the tort of bad faith in the context of surety bonds.

Second, the policy considerations behind the tort of bad faith do not apply to a payment bond. Notably, Old House did not negotiate the Bond between GCNA, wdg, and MAL, LP, and is instead a third-party beneficiary of the agreement between them. Therefore, because Old House was not part of the bargaining process, there is no need to

balance the power between GCNA and Old House by providing Old House with a remedy in tort.

For the reasons explained above, the Court finds that the Alabama Supreme Court would not recognize a bad faith claim on the Bond. Accordingly, GCNA's motion to dismiss Old House's bad faith claim will be granted and Old House's bad faith claim will be dismissed.

### IV.   CONCLUSION

It is therefore

ORDERED that GCNA's Motion to Strike or, in the Alternative, Motion to Dismiss Bad Faith Claim (Doc. 6) is GRANTED in part and DENIED in part. It is GRANTED as to GCNA's Motion to Dismiss and DENIED as MOOT as to GCNA's Motion to Strike. It is further

ORDERED that Old House's bad faith claim is DISMISSED with prejudice.

DONE this 26th day of May, 2021.

/s/ Stephen M. Doyle
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE